EUGENE C. RANDONO, APPELLANT, *v.* NEVADA REAL ESTATE COMMISSION, RESPONDENT.

No. 4560

NEVADA REAL ESTATE COMMISSION, APPELLANT, *v.* EUGENE C. RANDONO, RESPONDENT.

No. 4590

March 11, 1963                                          379 P. 2d 537

*Jones, Wiener & Jones,* of Las Vegas, for Eugene C. Randono.

*Harvey Dickerson,* Attorney General, and *W. Bruce Beckley,* Special Deputy Attorney General, for Nevada Real Estate Commission.

## OPINION

By the Court, McNAMEE, J.:

The Nevada Real Estate Commission, proceeding under NRS 645.690, ordered the revocation of all licenses issued by it to Randono. Randono appealed from this order to the district court which, after a hearing, found that the Commission did not abuse its discretion in revoking Randono's license, and dismissed the appeal.

It further ordered that Randono forthwith deliver to the Commission any and all licenses and pocket cards issued by it to him.

Appeal in Case No. 4560 is from this judgment of the district court.

The real estate licenses of Randono were revoked because of the finding by the Commission that he had violated Subsection 2 of NRS 645.280, Subsection 2 of NRS 645.310, and Subsections 5, 6, 7, 18, and 19 of NRS 645.630. The Commission also found that Randono had violated Commission Rules and Regulations, Section III, paragraph 2; Section IV, paragraph 6.

NRS 645.280 (2):

"No real estate salesman shall be employed by or accept compensation from any person other than the broker under whom he is at the time licensed."

NRS 645.310 (2):

"Every real estate salesman, promptly on receipt by him of a deposit on any transaction in which he is engaged on behalf of his broker-employer, shall pay over the deposit to the real estate broker."

NRS 645.630:

"The commission shall have the power to suspend or to revoke any license issued under the provisions of this chapter at any time * * * where the licensee in performing or attempting to perform any of the acts mentioned in this section is deemed to be guilty of:

\* \* \* \* \*

"5. Accepting a commission or valuable consideration as a real estate salesman for the performance of any of the acts specified in this chapter from any person except his employer, who must be a licensed real estate broker.

"6. Representing or attempting to represent a real estate broker other than the employer, without the express knowledge and consent of the employer.

"7. Failing, within a reasonable time, to account for or to remit any moneys coming into his possession which belong to others.

\* \* \* \* \*

"18.   Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interests of the public.

"19.   Any other conduct, whether of the same or a different character from that hereinbefore specified, which constitutes improper, fraudulent or dishonest dealing."

Nevada Real Estate Commission Rules and Regulations:

Section III, paragraph 2.   "A licensed broker-salesman or salesman is employed solely by the broker under whom he is licensed and has no right to perform independently any real estate service for individuals or other brokers. He may not list or sell real property or conduct any real estate transaction without the knowledge and consent of his employing broker. He is prohibited from receiving compensation for his services from anyone but his employing broker."

Section IV, paragraph 6.   "Every real estate broker-salesman or salesman, on receipt by him of a deposit on any transaction in which he is engaged on behalf of his broker-employer, shall immediately pay over the deposit to the real estate broker."

In the lower court the parties stipulated as follows:

"Appellant is and was, at all times mentioned in the complaint, licensed by respondent; until April 14, 1960, appellant was licensed as a broker-salesman; and, since said date, as a broker. Until said date, appellant was employed as a broker-salesman by Leland McArthur, a licensed real estate broker, herein known as broker.

"On or about February 4, 1960, Helen Carruthers, herein known as Carruthers, executed an offer to purchase real property located in Las Vegas, Nevada, which had been listed with broker by its owner, one Kerwin (Exhibit A, Complaint). Simultaneously, Carruthers gave one Scott, also employed by broker, as a salesman, a check for $200, as a deposit on said property (Exhibit B, Complaint). On that day, or the day after, said Scott delivered said check to appellant, who placed the same in appellant's unlocked desk in broker's office.

"Appellant kept said check in appellant's desk for at least a week or so, when appellant delivered it to broker. Said check was deposited in broker's trust account on March 10, 1960.

"Carruther's offer was never accepted by Kerwin.

"At least as early as the latter part of February or the early part of March, 1960, Carruthers demanded of appellant the return of said deposit, and continued to demand such return thereafter. On or about April 13, 1960, broker delivered a check for $200 to appellant and appellant acknowledged in writing that said check 'represented deposit made to me by Mrs. Helen Carruthers.' Appellant deposited said check in his personal bank account which contained funds of his own. Carruthers continued to demand of appellant return of said deposit after April 13, 1960, but appellant did not return the deposit to Carruthers until on or about July 30, 1960, after Carruthers had commenced a legal action to obtain its return, which action was then being tried.

"In the latter part of March, 1960, appellant commenced negotiations with one Jensen to purchase said Kerwin property and had escrow instructions prepared to cover such sale at Pioneer Title Insurance Co. Appellant instructed said company to pay the real estate commission to appellant, and upon the close of such escrow, said company paid said commission, in the amount of $849.39 directly to appellant on or about April 7, 1960, none of which was paid to broker. Said company had no knowledge that appellant was employed or connected with broker."

In addition to said stipulation, the lower court reviewed the testimony of several witnesses presented at the hearing before the Commission, which in some respects was conflicting. The briefs of appellant Randono, however, cite only excerpts from the testimony and other evidence favorable to his position. In so far as these are inconsistent with the above stipulation they are disregarded. No new evidence was presented in the court below.

Under NRS 645.760 it is provided that the district court on an appeal from the decision of the Commission is "limited solely to a consideration and determination of the question whether there has been an abuse of discretion on the part of the commission in making such decision" and the burden of proof is upon the appellant. Being thus limited, the lower court found that there had been no abuse of discretion on the part of the Commission in making its decision with respect to the guilt of appellant. The function of this court at this time is the same as that of the lower court. McKenzie v. Shelly, 77 Nev. 237, 362 P.2d 268. The action of the Commission is clothed with the presumption of validity and is supported by substantial evidence as well as by appellant's own stipulation as to the facts. We are in accord with the determination of the trial court that appellant has not sustained his burden of showing that the bounds of the Commission's discretion in determining that appellant had violated statutory provisions and rules of the Commission have been exceeded.

Subsection 9 of NRS 645.630 provides that the Commission shall have the power to suspend or revoke any license when the licensee is found guilty of violating any of the provisions of Chapter 645 of NRS which is the Real Estate Brokers and Salesmen Act. As hereinbefore pointed out, the Commission had found that appellant had violated several sections of said act and two of its rules. For such violations the penalty of revocation of licenses was imposed.

Under Subsection 3 of NRS 645.760 the trial court was limited in making its decision with respect to the penalty to be imposed in the same manner as with respect to appellant's guilt. That is, "solely to a consideration and determination of the question whether there has been an abuse of discretion on the part of the commission in making such decision." In its finding that there was no irregularity or abuse of discretion shown by the action of the Commission in this regard

we are compelled to conclude that the trial court acted properly. That we as triers of the fact might have reached a different conclusion as to the penalty to be imposed is of no significance on this appeal when we cannot say, as a matter of law under the facts of this case, that there has been an abuse of discretion on the part of the Commission.

In Macfarlane v. Department of Alcoholic Bev. Con., 51 Cal.2d 84, 330 P.2d 769, the petitioner therein urged that revocation, rather than mere suspension, of license was too harsh. The California constitution expressly authorized license revocation for the conduct complained of. The California Supreme Court stated in this regard: "On the record this might appear to some of us to be a just criticism. But no such determination is within our proper function. * * * [T]his court is not free to substitute its own discretion as to the matter, even if it were inclined so to do."

In Kendall v. Beiling, 295 Ky. 782, 175 S.W.2d 489, the Board of Health revoked a license to practice optometry. The circuit court set aside the action of the board. In reversing the action of the circuit court, the Court of Appeals said: "We are constrained to observe, perhaps gratuitously, that the permanent revocation of this young man's license seems to be severe under the circumstances, where the evil sought to be struck was apparently the unlawful practice by the corporation, which might have been done by a direct proceeding. But the legislature vested such discretion and power in the State Board of Health and the court has no right to modify that decision, that also being within the province of the Board."

See also 2 Cal.Jur.2d 393, Administrative Law § 235; In re Oregon Liquor Control Commission, 181 Or. 707, 185 P.2d 246.

The judgment in Case No. 4560 is affirmed.

. The judgment of the lower court dismissing Randono's appeal from the decision of the Commission and

which ordered Randono forthwith to deliver to the Commission any and all licenses and pocket cards issued by it to him was dated July 16, 1962. Randono's notice of appeal therefrom to this court was served and filed the same day. On July 18, 1962, the Commission filed a motion to cite Randono for contempt because of his failure to surrender his licenses as required by the judgment of July 16, 1962. The motion was heard July 24, 1962, together with a motion to require Randono to post a supersedeas bond to stay the execution of the judgment pending his appeal to this court. The Commission contends that the lower court erred in denying these motions, and its appeal in Case No. 4590 is from the denial of said motions.

Rule 70, NRCP, provides, in part, that if a judgment directs a party to deliver "documents or to perform any other specific act and the party fails to comply within the time specified" the court may adjudge the party in contempt. Randono did not seek, pursuant to Rule 73 (d) (2), NRCP, a stay of the execution of the judgment directing him to deliver the licenses and pocket cards forthwith. Enforcement of the judgment, pursuant to Rule 70, NRCP, was therefore available to the trial court. Caplow v. District Court, 72 Nev. 265, 302 P.2d 755. There is nothing in the Real Estate Brokers and Salesmen Act which provides for any stay of the judgment of the district court pending an appeal to this court. Consequently the lower court erred in holding that the judgment was stayed whether or not a supersedeas bond was filed.

The question whether an order refusing to punish for an alleged contempt is appealable does not require determination at this time.

Inasmuch as the lower court in effect stayed the execution of its judgment, even though such action of that court was erroneous, it was within its discretion, under Rule 70, NRCP, to refuse to adjudge Randono in contempt. Cf. State Bar of California v. Superior Court, 4 Cal.2d 86, 47 P.2d 697.

The order denying the motion to cite Randono for contempt is affirmed. The appeal from the order dispensing with the requirement of a supersedeas bond to stay execution of the judgment pending appeal to this court having become moot is dismissed.

BADT, C. J., and THOMPSON, J., concur.